Linhbergh Carlos Arceo
Fed. Reg. No. 13136-111
Federal Correctional Institution
3600 Guard Road
Lompoc, CA 93436-2705

# FILED

FEB 1 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## IN THE UNITED STATES DISTRICT COURT FOR

## THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　Plaintiff / Appellee,　　) | **Case No. CR-09-00616-JW** |
| 　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　) | **PETITION FOR HABEAS RELIEF UNDER** |
| 　　　　　　　　　　　　　　　　　) | **28 U.S.C. §2255 ON MOTION TO SET** |
| LINHBERGH CARLOS ARCEO,　　　　) | **ASIDE, VACATE OR CORRECT SENTENCE** |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　Defendant / Appellant.　) | |
| 　　　　　　　　　　　　　　　　　) | |

## MEMORANDUM OF POINTS AND AUTHORITIES FOR MOTION TO SET ASIDE,

## VACATE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

COMES NOW, Petitioner, Linhbergh Carlos Arceo respectfully seeking leave to submit this Motion for relief from Judgment of this Court in the above-stated cause pursuant to 28 U.S.C. §2255. Movant is a person serving a Federal Sentence asserting a claim that the judgment and sentence imposed are a violation of his rights under the Fifth and Sixth Amendments. For the reasons set forth in this Brief, the judgment and sentence are unconstitutional and are subject to collateral relief. In support of the Section 2255 Motion, this Memorandum of Points and Authorities addresses the factual and legal basis to the claim presented and is incorporated by reference herein. United States v. Speelman, 431 F.3d 1226, 1239 (9th Cir. 2005).

## STANDARD

For Federal prisoners like the Petitioner who are seeking Habeas-type relief, the only remedy is through a Motion to Vacate. United States v. White, 53 F.Supp.2d 976 (W.D. Tenn. 1999). A challenge to a federal conviction is most appropriately brought as a motion to vacate. United States v. Lune, 207 F.3d 1075 (8th Cir. 2000).

Motion to vacate or set aside generally supercedes habeas corpus and provides the exclusive remedy to one in custody pursuant to a federal conviction. Brown v. Mendez, 167 F.Supp.2d 723 (M.D. Pa. 2001). Neither prior unsuccessful motion to vacate sentence nor inability to meet requirements for filing a successive motion made inadequate as a remedy, as was required for a prisoner to be entitled to seek writ of habeas corpus. Farquhar v. Wendt, Appx. 393 (5th Cir. 2004).

A motion to vacate, set aside, or correct sentence must be granted when defendant's sentence was imposed in violation of the Constitution or laws of the United States. Shell v. United States, 2006 WL 138 9606 (7th Cir. 2006). Illustrative of the encompassing range of a §2255 motion, the case Evenstad v. United States, 494 F.Supp. 146 (D. Minn. 1980) provides a good example of the award of §2255 relief from a plea of guilty.

United States v. Williams, 651 F.2d 644 (9th Cir. 1981) (entertaining a §2255 attack on a federal statute and granting relief); United States v. Gabriel, 525 F.Supp. 173, 179 (N.D. Ill. 1981) aff'd. 692 F.2d 759 (7th Cir. 1982) stating that §2255 is available for jurisdictional, constitutional, or fundamental defects.

## STATEMENT OF JURISDICTION

The United States District Court has Jurisdiction pursuant to Title 18 U.S.C. 3231 which provides exclusive jurisdiction of offenses against the United States. The United States Court of Appeals for this Circuit also has appellate jurisdiction pursuant to 28 U.S.C. Sections 1291 and 1294 and 18 U.S.C. Sections 3742(a)(1) and (2) and is based on the date of entry of judgment sought to be reviewed.

## STATEMENT OF CASE

Linhbergh Carlos Arceo was indicted in the Northern District of California, San Jose Division for violation 21 U.S.C. §846, §841(a)(1) & §841(b)(1)(A)(VIII).

He pleaded guilty and was sentenced to 240 months on February 28, 2010.

## BACKGROUND AND BASIS FOR PETITIONER ASKING FOR RELIEF

The following, culled from "The Proceedings held before the Honorable James Ware" provide the main thrust of Petitioner's basis for relief. See, Minutes 16:10:18 23 to 16:12:37 25:

AS THE COURT IS AWARE THIS IS A SECTION C PLEA AGREEMENT. IT'S ACTUALLY A STIPULATED RANGE. IT'S NOT STIPULATED TO 240. IT'S STIPULATED TO 240 TO 262 MONTHS.

THE GOVERNMENT IS ASKING FOR THE LOW END OF THAT STIPULATED RANGE. AS THE COURT IS AWARE, THE PARTIES HAD ERRONEOUSLY BELIEVED THAT MR. ARCEO WAS QUALIFIED AS A CAREER OFFENDER UNDER THE SENTENCING GUIDELINES, AND I THINK THAT WAS OBVIOUSLY TAKEN INTO ACCOUNT IN ENTERING INTO THE PLEA AGREEMENT.

THAT HAVING BEEN SAID, I AGREE WITH THE RECOMMENDATIONS IN THE PSR. I BELIEVE THERE'S A WAY TO GET THERE REASONABLY UNDER BOOKER, AND I THINK THAT THE COURT SHOULD, IN FACT, FOLLOW THE PLEA AGREEMENT EVEN THOUGH IT'S BASED ON AN ERRONEOUS UNDERSTANDING OF THE APPLICABILITY OF THE CAREER OFFENDER GUIDELINE.

THE DEFENDANT HAS HAD -- THERE WERE FOUR 924(C) COUNTS THAT WERE ORIGINALLY ALLEGED IN THE INDICTMENT. THOSE WERE ALL DISMISSED BASED ON THE PLEA NEGOTIATIONS AND THAT HAD SOMETHING TO DO OBVIOUSLY WITH THE GOVERNMENT HAVING AGREED THAT THE DEFENDANT WAS A CAREER OFFENDER ERRONEOUSLY AND THAT AFFECTED THE GOVERNMENT ENTERING INTO THIS AGREEMENT TO DISMISS THE 924(C) COUNTS.

THE DEFENDANT DOES HAVE FOUR CONVICTIONS FOR FELONY DRUG OFFENSES THAT ARE

4

NOT BEING SCORED HERE. THIS IS, IN FACT, HIS SEVENTH CONVICTION FOR A FELONY DRUG OFFENSE AND HIS EIGHTH FELONY CONVICTION OVERALL.

THE GOVERNMENT IS NOT BRINGING A MOTION AS SET FORTH IN ITS SENTENCING MEMORANDA FOR REASONS THAT ARE SET FORTH IN THAT SENTENCING MEMORANDA.

IN ADDITION, THE GOVERNMENT WANTS TO REMIND THE COURT THAT THERE IS AN AGREEMENT TO FORFEIT THE FIREARMS AND THE AMMUNITION THAT WAS ENTERED INTO IN PARAGRAPH 10(G) OF THE PLEA AGREEMENT.

AND LAST FRIDAY THE COURT DID SIGN A PRELIMINARY ORDER FORFEITURE, AND I WOULD ASK THE COURT TODAY TO FORFEIT ALL OF THE DEFENDANT'S INTERESTS IN THE AMMUNITION AS WELL AS THE FIREARMS AND, AGAIN, SPECIFYING ITEMS 10(A) THROUGH (G) IN THE PLEA AGREEMENT.

AGAIN, WE'RE ASKING THE COURT TO FOLLOW THE PLEA AGREEMENT AND STIPULATED TO 240 TO 262 AND IMPOSE THE LOW END AT 240 MONTHS.

THANK YOU.

THE COURT: VERY WELL. DOES THE PROBATION OFFICER HAVE ANY FURTHER COMMENTS OR RECOMMENDATIONS?

This excerpt highlights the unreasonableness of the sentence. See, 16:09:41 10 to 16:10:09 17:

HE'S INTELIGENT, HARD WORKING, AND HE KNOWS THAT HE'S GOT TO PAY FOR NOT ONLY THE INSTANT OFFENSE, BUT HE'S GOT TO PAY FOR HIS PAST ACTIVITIES. THE 240-MONTH SENTENCE IS QUITE A LONG TIME TO A 37 YEAR OLD. AND WE'RE ASKING THE COURT TO IMPOSE THAT SENTENCE BECAUSE IT'S THE ONE WE AGREED TO.

Perhaps the most egregious of the errors is the one referenced below. See, 16:10:27 2 to 16:10:49 9:

THE GOVERNMENT IS ASKING FOR THE LOW END OF THAT STIPULATED RANGE. AS THE COURT IS AWARE THE PARTIES HAD ERRONEOUSLY BELIEVED THAT MR. ARCEO WAS QUALIFIED AS A CAREER OFFENDER UNDER THE SENTENCING GUIDELINES, AND I THINK THAT WAS OBVIOUSLY TAKEN INTO ACCOUNT WITH THE ENTERING INTO THE PLEA AGREEMENT.

The Government admits there was error, but does not state what remedial measures were made to correct the errors. Just stating they were taken care of, petitioner contends is insufficient.

## SUMMARY OF THE ARGUMENT

(1) 18 U.S.C. §3553(a) factors mirror the test for an Eighth Amendment violation and thus a judgment and sentence imposed giving exceptional weight to Guideline Calculations violated "[T]he Eighth Amendment's protection against excessive or cruel and unusual punishments and its basic 'precept of justice that punishemnt for [a] crime should be graduated and proportioned for [the] offense when the District Judge specifically found by a preponderance of the evidence that the sentence was "not reasonable" under 18 U.S.C. §3553(a).

(2) The principles of Nelson v. United States, 08-5657, 129 S.Ct. 890 (U.S. 1-26-2009) are violated in the instant case via the Court's acceptance of the Government's position on relevant conduct. The relevant conduct calculated under the Sentencing Guidelines while conforming to the guideline calculation formulas was per se "unreasonable" as to the Petitioner. It had no rational relevance to his role in the conspiracy and once again lead to a sentence calculated not under 18 U.S.C. §3553(a), but deprived from the guidelines. It is logically imperative that the Nelson rule must apply to the elements of guidelines as well as the guidelines as a whole.

This Case Presents the Issue as to Whether the District Court Violates the Eighth Amendment when the Sentence Guideline Factors are Given Superior Consideration to 18 U.S.C. §3553(a).

"[T]he Eighth Amendment's protection against excessive or cruel and unusual punishemnts flows from the basic 'precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense.'" Kennedy v. Louisiana, 128 S.Ct. 2641, 2649 (2008) (quoting, Weems v. United States, 217 U.S. 349, 367 (1910)). In analyzing whether a sentence is cruel and unusual punishment, a court first makes "a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." United States

v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006) (citation and internal quotations omitted), and considers "the gravity of the offense and harshness of the penalty." Solem v. Helm, 463 U.S. 277, 290-91 (1983). If the sentence is grossly disproportionate, the court then considers "the sentences imposed on other criminals in the same jurisdiction ... and the sentences imposed for commission of the same crime in other jurisdictions." Id. at 291. "[O]utside the context of capital punishment, there are few successful challenges to the proportionality of sentences." Johnson, 451 F.3d at 1242.

"In general, a sentence within the limits imposed by statute is neither excessive not cruel and unusual under the Eighth Amendment." Id. at 1243 (citation and internal quotations omitted); United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005) (citation and internal quotations omitted). However, a statutorily-condoned punishment may, in rare cases, exceed the limits of the Constitution. See, Weems, 217 U.S. at 382 ("[E]ven if the minimum penalty ... had been imposed, it would have been repugnant to the [constitutional prohibition against cruel and unusual punishments]. In other words, the fault is the law ...");[1] Tyree v. White, 796 F.2d 390, 393 (11th Cir. 1986) (in evaluating an Eighth Amendment challenge on federal habeas review of an Alabama sentence, "a sentence may be unconstitutional even if it is valid under state law"); Downey v. Perini, 518 F.2d 1288, 1292 (6th Cir. 1975), vacate for reconsideration in light of amendment to Ohio Revised Code, 423 U.S. 993 (1975) (issuing writ of habeas corpus where Ohio's minimum 10 and 20 year terms of imprisonment were disproportionate to crimes of possession of marijuana for sale, and sale of marijuana, respectively).

---

[1] Weems was based on the Phillipine Bill of Rights. However, "the provision of the Phillipine Bill of Rights, prohibiting the infliction of cruel and unusual punishemnt, was taken from the Constitution of the United States, and must have the same meaning." Weems, 217 U.S. at 367. Furthermore, the Supreme Court repeatedly cites Weems as a leading case when interpreting the Eighth Amendment to the United States Constitution. See e.g., Kennedy, 128 S,Ct, at 2649; Atkins v. Virginia; 536 U.S. 304, 311 (2002); Solem, 463 U.S. at 287.

## PETITIONER'S PLEA WAIVER WAS DEFECTIVE

Appeal and collateral review waivers in plea agreements are valid only if they are knowing and voluntary. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938). In determining if it is knowing and voluntarily made, and thus valid, this Court examines the content and language of the plea agreement," as well as the plea colloquy. Zerbst, supra. Does the defendant know the consequences of the waiver? Maby v. Johnson, 104 S.Ct. 2543, 2547 (1984).

Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver. See, Town of Newton v. Rumery, 480 U.S. 386, 393, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); Brady v. United States, 397 U.S. 742, 752-53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Adams v. United States, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed.2d 268 (1942).

The Supreme Court has explained that an inquiry into whether a waiver of rights in knowing, voluntary and intelligent requires examination of "the particular facts and circumstances surrounding this case, including the background [and] experience of the accused." Edwards v. Arizona, 451 U.S. 477, 482, 68 L.Ed.2d 378, 101 S.Ct. 1880 (1981). The Petitioner's lack of legal training makes it likely that he did not enter into Plea voluntarily. Since the guilty plea was involuntarily entered, the collateral waiver is likewise invalid.

Most circuits, including the Third Circuit have only to enforce such waivers if they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice. United States v. Khattak, 273 F.3d 557, 561 (3rd Cir. 2001); United Sattes v. Gwinnett, 483 F.3d 200, 203 (3rd Cir. 2007) (The Third Circuit will refrain from exercising

its jurisdiction in cases involving an appeal waiver unless the result would work a miscarriage of justice); United States v. Maby, 536 F.3d 231, 237 (3rd Cir. 2008) (Under Khattak and Guinnett, where there is a collateral waiver, our task on appeal of a denial of a habeas corpus petition is to determine whether the District Court properly considered the validity of the waiver, specifically examining the knowing and voluntary nature).

Other circuits, including the First Circuit, have adopted the miscarriage of justice exception and included within this exception, inter alia, sentences based on constitutionally impermissible factors (e.g. race) and claims asserting ineffective assistance of counsel. See, United States v. Leater, 257 F.3d 14, 24 n.9 and co. (1st Cir. 2001) (stating that the Court would address, inter alia, sentencing based on constitutionally impermissible factors, even when a waiver existed).

Enforcing a collateral attack waiver where constitutionally deficient lawyering prevented the Petitioner from understanding his plea would result in a miscarriage of justice. United States v. Shedrick, 493 F.3d 252, 298 (3rd Cir. 2007).

<u>WHETHER PETITIONER'S CONVICTION AND SENTENCE ARE UNCONSTITUTIONAL UNDER APPRENDI</u>

<u>ARGUMENTS AND AUTHORITIES</u>

A. <u>Movant's Conviction and Sentence are Unconstitutional Under Apprendi</u>.

Prior to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the lower federal courts had long and unanimously held that, in creating the drug quantity and type gradations of 21 U.S.C. §841(b), Congress intended to create only "sentence factors," provable to a judge at sentencing by only a proponderance of the evidence and not elements of separate aggravated drug offenses.[1] For example, in <u>United States v. Woods</u>, 843 F.2d 1382, 1390 (9th Cir. 1987), the Eighth Circuit concluded that, in §841(b):

> Congress has merely deemed a particular fact relevant to sentencing and has dictated the enhancement available <u>if the sentencing judge determined the offense so warrants</u>. We are disinclined to transform a sentencing factor into an element of the substantive offense <u>against the will of Congress</u>. (emphasis added).

Likewise, in a case decided only shorthly before <u>Apprendi</u>, the Seventh Circuit held that:

> [t]he avoidance of the constitutional issue by statutory construction is not available in the case of Section 841 ... It is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted under Section 841(a) to be determined at sentencing ... and Congress's determination of the apporpriate allocation of decisional responsibilities carries a presumption of constitutionality.

<u>United States v. Jackson</u>, 207 F.3d 910, 920 (7th Cir.), cert. granted and judgment sub. nom.; <u>Jackson v. United States</u>, 531 U.S. 953 (2000), judgment of affirmance reinstated on remand, 236 F.3d 886, 888 (7th Cir. 2001).

And the Circuit, even more recently has affirmed this view: "Congress therefore clearly intended that drug quantity be a sentencing factor, not an element of the crime under §841; the statute is not susceptible to a contrary

interpretation." <u>United States v. Norby</u>, 225 F.3d 1053, 1058 (9th Cir. 2000),

overruled by <u>United States v. Buckland</u>, 289 F.3d 558, 568 (9th Cir. 2002)

(en banc) ("<u>Buckland II</u>"), cert. denied, 535 U.S. 1105 (2002). To be sure, in

the en banc decision in <u>Buckland II</u>, this Circuit overruled <u>Norby</u> by holding

that, in order to avoid the constitutional problems that <u>Apprendi</u> posed for

the Court's former interpretation of §841(b), it would interpret §841 as

required that the type and quantity of a controlled substance under §841(b)

be charged in an indictment and proved to, and found by, a jury beyond a

reasonable doubt. <u>See</u>, <u>Buckland II</u>, 289 F.3d at 563–68.

But, as persuasively outlined by Judge Tashim in his opinion for the

panel in <u>Buckland</u> ("<u>Buckland I</u>"), and in his dissent to the en banc <u>Buckland II</u>

decision, that course was not available, because the statutory language and

legislative history clearly demonstrated that Congress intended the type and

quantity gradations of §841(b) to be sentencing factors, to be proved to, and

found by, a judge by only a preponderance of the evidence:

> The statute is now and always has been structured by defining
> the offense in subsection (a) and the penalties in subsection
> (b). The legislative history of the statute clearly differentiates
> between violations and criminal penalties. Practically telling
> is that, in describing the penalties section, the legislative
> history note that "[t]he foregoing sentence procedures give
> maximum flexibility to judges, permitting them to tailor the
> period of imprisonment, as well as the fine, to the circumstances
> involved in the individual case."
>
> In 1970, the penalties depended on the type of drugs, rather
> than the amount of drugs. In 1983, however, Congress recognized
> that, "[W]hile it is appropriate that the relative dangerousness
> of a particular drug should have a bearing on the penalty for
> its importation or distribution, another important factor is
> the amount of the drug involved." Congress therefore amended
> §841 to provide greater penalties for offenses involving larger
> amounts of drugs. The drug quantity determination, therefore,
> was placed in the penalties section, which Congress had already
> described as containing sentencing procedures for the judge.

<u>United States v. Buckland</u>, 259 F.3d 1157, 1164–65 (9th Cir. 2001) ("<u>Buckland I</u>")

(citations and footnote omitted; emphasis in original), overruled on rehearing

en banc, 289 F.3d 558, 568 (9th Cir. 2002) (en banc) ("Buckland II"). See also,

Buckland II, 289 F.3d at 586 (Tashima, J. dissenting).

Indeed the Government itself had, prior to Apprendi, taken the position

that drug type and quantity gradations of §841(b) were intended by Congress

to describe "sentencing factor," not elements:

> Neither the type nor the quantity of the drugs involved
> is, however, an element of the conspiracy offense defined
> by subsection 846, or of the substantive distribution
> crimes defined by section 841. The language and structure
> of relevant statutory provisions make clear that type
> and quantity are factors to be taken into account at
> sentencing.

Brief of the United States, Edwards v. United States, No. 96-8732, 1998 WL 28074

at *10 (Jan. 23, 1998) (No. 96-8732).[2] And even after Apprendi, the Government

"conceded" that "Congress's intent to have drug quantity decided by the judge

at sentencing is clear from the statute's structure and legislative history."

Buckland II, 289 F.3d at 587 (Tashima, J. dissenting); see also, Id. at 564

(Government argued that "this pre-Apprendi view [that drug type and quantity

were sentencing factors to be found by a judge by a preponderance of the

evidence] reflect[ed] Congress's intent in enacting the federal drug statutes").

In sum, "Congress therefore clearly intended that drug quantity [and type]

be [ ] sentencing factor[s], not [ ] elements of the crime under §841; the

statute is not susceptible to a contrary interpretation." Norby, 225 F.3d at

1058. But, as demonstrated below, congressional intent runs afoul of the

Constitution as interpreted by the Supreme Court's decision in Apprendi.

B.  Congress's Intended "Sentencing Factors," the Treatment of Drug Type

   and Quantity, Under §841(b) is Unconstitutional Under the Supreme

   Court's Decision in Apprendi v. New Jersey, 530 U.S. 566 (2000).

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held

that "[o]ther than the fact of a prior conviction, any fact that increases

13

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

After Apprendi, it is now clear that, because drug type and quantity under §841(b) may raise the statutory maximum, Congress's intended "sentencing factors" treatment is unconstitutional. The Supreme Court recognized as much when it found that failure to allege an aggravating threshold quantity of drugs in the indictment was error that was plain. See, United States v. Cotton, 535 U.S. 625, 630-32 (2000). The Court of Appeals have also recognized. See e.g., United States v. Keith, 230 F.3d 784, 768 (5th Cir. 2000) (noting that Fifth Circuit has squarely held that Apprendi overruled ... its jurisprudence that treated drug quantity as a sentencing factor rather than as an element of the offense under §841") (citation omitted); United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000) ("[I]f the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. §841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt").

But does this mean that drug type and quantity are "elements" of §841 for all purposes? Despite the Fifth Circuit's loose use of the word "elements" in its post-Apprendi decisions, see e.g., Keith, 230 F.3d at 786; Doggett, 230 F.3d at 165, it is quite clear that the Fifth Circuit does not believe that drug quantity under §841 is always an "element." This is evidenced by that fact that, in the Keith case, the Fifth Circuit upheld the application of a mandatory minimum sentence under 21 U.S.C. §841(b)(1)(A). See, Keith, 230 F.3d at 787.

Thus, in Keith, Doggett and its other cases, the Fifth Circuit has applied Apprendi effectively to hold the following: (1) drug quantity under §841 is an element when its effect is to raise the statutory maximum sentence (which

can only be evidenced by an actual sentence in excess of the statutory maximum for lower tiers of drug quantities[3]); but (2) drug quantity is <u>not</u> an element otherwise. Other circuits have followed suit. <u>See</u> e.g., <u>United States v. Robinson</u>, 241 F.3d 115, 119-22 (1st Cir. 2001) (collecting cases from numerous federal circuits).

This sort of "mix-and-match" approach to §841 makes sense only if the courts still believe that Congress intended the threshold drug amounts in §841 to be sentencing factors, not elements. Under that view, it would make sense to try to effectuate congressional intent by continuing to treat drug quantity as a sentencing factor, except to the extent that the Constitution (as it is interpreted in <u>Apprendi</u>) requires otherwise. But this option is not available for the following reasons.

C. <u>Congress Intended for Drug Type and Quantity Under §841(b) to be Sentencing Factors Provable to a Judge by Only a Preponderance of the Evidence, the Courts Cannot Now Judicially Rewrite the Statute to Bring it into Compliance with Apprendi.</u>

As attractive as the option of remedying the <u>Apprendi</u> problem by (either always or sometimes) treating drug type and quantity as an essential element of the offenses described in §841 may seem, that option is simply not available. It is well settled that the courts cannot judicially rewrite a statute, even to save it from a finding of unconstitutionality. As the Supreme Court has said, "th[e] [constitutional avoidance] canon of construction does not give courts the prerogative to ignore the legislative will in order to avoid constitutional adjudication; although [courts] often strain to construe legislation so as to save it against constitutional attacks, [they]  must not and will not carry this to the point of ... judicially rewriting [that] legislation." <u>Commodity Futures Trading Comm'n. v. Schor</u>, 487 U.S. 833, 841

(1986) (internal quotation marks, brackets and citations omitted); cf. United States v. Evans, 333 U.S. 483, 495 (1948) (declining to rewrite federal criminal statute proscribing alien harboring/smuggling where it was impossible to tell what penalty Congress intended to prescribe).

Therefore, those parts of §841 that determine the statutory maximum sentence on the basis of drug quantity and type must be stricken as unconstitutional. The next question is whether the unconstitutional portions of the statutes can be severed from the remaining part so that some part of the statute remains operational. See e.g., Alaska Airlines, Inc. v. Brock, 480 U.S. 674, 678 (1987) (stating principle of severability). The answer to that question is: "No."

"Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently." Id. (citation omitted). That is precisely the case with 21 U.S.C. §841(a) and (b). Section 841(a) - which describes the prohibited acts of distribution, possession with intent to distribute, manufacturing, etcetera - obviously cannot function independently of the penalty provisions set forth in §841(b). This is so because, without the provisions of 21 U.S.C. §841(b) - which condition punishment on drug quantity and type - 21 U.S.C. §841(a) describes only prohibited acts with no penalty, and, as Professor LeFave has noted: "A crime is made up of two parts, forbidden conduct, and a prescribed penalty, the former without the latter is no crime." 1 W. LeFave & A. Scott, Jr.; Substantive Criminal Law, §1.2(d) (1986) (footnote omitted); cf. Evans 333 U.S. at 495 (upholding dismissal of indictment where Congress had failed to specify penalty applicable to proscribed acts).

Notably, a Panel of this Court has agreed with this argument, at least

in part. See, Buckland I, 259 F.3d at 1162–69.[4] In Buckland I, the Panel held that, in §841, Congress clearly intended to make drug quantity a sentencing enhancement provable to a judge by a preponderance of the evidence, not an offense element that had to be charged in the indictment and proved to, and found by, a jury beyond a reasonable doubt. The panel then found that this treatment was unconstitutional under Apprendi; therefore, it declared unconstitutional those provisions of the statute that increases sentenced in the cases of drug quantity (namely, §841(b)(1)(A) and (B)). However, it found that without triggering aggravating quantities – were severable from the unconstitutional parts of the statute. See, Buckland I, 259 F.3d at 1163–69; see, 21 U.S.C. §841(b)(1)(C) and (D).

But, had the Buckland I panel considered the effect of drug type as well as drug quantity, it could have salvaged even §841(b)(1)(C) or (D). See, Buckland I, 259 F.3d at 1163 n.9 (declining to consider constitutionality issue with respect to drug type because appellant had not raised the argument clearly in brief). This is so because, unlike with quantity, every part of §841 requires a specification of drug type. A logical extention of reasoning of the Buckland I panel opinion would require that the entire statute be stricken.

In sum, because the now–unconstitutional drug type and quantity based "sentencing factors" of 21 U.S.C. §841(b) cannot be severed from the substantive acts described in §841(a)[5]; §841(a) and (b) must be stricken as unconstitutional.

1. See e.g., United States v. Lindia, 82 F.3d 1154, 1160-61 (1st Cir. 1996); United States v. Campuzano, 905 F.2d 677, 679 (2nd Cir. 1990); United States v. Gibbs, 813 F.2d 596 (3rd Cir. 1987); United States v. Parker, 39 F.3d 542, 554 (4th Cir. 1994); United States v. Morgan, 835 F.2d 79, 81 (5th Cir. 1987); United States v. Levy, 904 F.2d 1026, 1033-34 (6th Cir. 1990); United States v. Whitley, 905 F.2d 163, 165 (7th Cir. 1990); United States v. Woods, 834 F.2d 1382, 1390 (9th Cir. 1987); United States v. Sotely-Rivera, 931 F.2d 1317, 1319 (9th Cir. 1991); United States v. Silvers, 84 F.3d 1317, 1320-21 (10th Cir. 1996); United States v. Williams, 876 F.2d 1521, 1524-25 (11th Cir. 1980); United States v. Lam Kwong-Wah, 966 F.2d 682, 685-86 (D.C. Cir. 1992).

2. "Once the Solicitor General has taken a position with respect to a pending case, that position will, in most cases, become the Government's position as a matter of course." United States v. Ray, 21 F.3d 1134, 1138 n.6 (D.C. Cir. 1994) (internal quotation marks and citations omitted).

3. See e.g., Doggett, 230 F.3d at 165-66. In Doggett, the Fifth Circuit found that element treatment was not required for §841(b) drug quantity for one defendant whose actual sentence of 235 months did not exceed the "unaggravated" statutory maximum of 20 years. See, Id. at 165. However, the Fifth Circuit did not grant relief to another defendant whose life sentence exceeded the "unaggravated" (by drug quantity) statutory maximum of 30 years. See, Id. at 166.

4. As previously indicated, Movant acknowledged that a majority of the en banc Ninth Circuit has rejected the reasoning of the panel decision in Buckland I. See, Buckland II, 289 F.3d at 663-68. However, three judges of the Ninth Circuit dissenting from the en banc holding for essentially the same reasons set forth in the panel decision. See, Buckland II, 289 F.3d at 584-89 (Tashima, J. dissenting, joined by Reinhart and Parez, J.J.). Movant would urge the reasoning advanced in the panel majority opinion as well as that contained in Judge Tashima's opinion dissenting from en banc Buckland II decision.

5. As stated, because proof of drug type is necessary for invocation of any of the provisions of 21 U.S.C. §841(b), none of §841(b) can stand, and hence §841 cannot stand either. But even if the question of severability is framed only in terms of whether the quantity-based increased statutory maximum sentences found in subsections 841(b)(1)(A)-(C) can be severed from the remaining sections of §841(b), the answer must likewise be: "No." Congress obviously intended the multi-tier system of statutory minima and maxima to function as a unified whole. To simply strike out the increased statutory maxima of subsections 841(b)(1)(A)-(C) would create a scheme of punishment that Congress did not intend. See, United States v. Balesco-Heredia, 319 F.3d 1080, 1086 (9th Cir. 2003) (so holding in context of §841). Indeed, the scheme would be unworkable - for example, a person trafficking in 1,000 kilograms (or more) of marijuana would be subject to a statutory minima punishment of 10 years of imprisonment, see, 21 U.S.C. §841(b)(1)(A)(vii), but a statutory maxima of only 5 years of imprisonment, see, 21 U.S.C. §841(b)(1)(D).

## PETITIONER WAS DENIED HIS CONSTITUTIONALLY PROTECTED RIGHT

## UNDER THE SIXTH AMENDMENT TO EFFECTIVE ASSISTANCE OF COUNSEL

Standard of Review

A claim of ineffectiveness of counsel presents a mixed question of law and facts which is reviewed de novo. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). A defendant alleging ineffective assistance of counsel has the burden of demonstrating that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 104 S.Ct. at 2064. The defendant must point to error or omissions in the record on appeal that establish that he did not receive adequate representation. United States v. Birges, 723 F.2d 666, 669 (9th Cir. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Constitution Amendment VI. This right has come to be regarded as a sine qua non of our criminal justice system. Frazer v. United States, 18 F.3d 778 (9th Cir. 1994).

The right to counsel guaranteed by the Constitution requires that "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." Strickland, 466 U.S. at 685, 104 S.Ct. at 2063. In other words, the assistance to which a defendant is entitled must be "effective," Strickland, 466 U.S. at 668, 104 S.Ct. at 2064, unhindered either by the State or by counsel's constitutionally deficient performance. This required performance contemplates open communication unencumbered by unnecessary impediments to the exchange of information and advice. See, Javor v. United States, 724 831, 834 (9th Cir. 1984) (a defendant's

Sixth Amendment right to counsel is denied when his attorney "sleeps' through a substantial portion of the trial); See also, Tucker v. Day, 969 F.2d 155, 159 (5th Cir. 1992) (an attorney who provided his client no assistance at sentencing did not discharge his Sixth Amendment responsibilities).

Ineffective Assistance of Counsel occurs when counsel's performance falls below an objective standard of reasonableness and the deficient performance affected the outcome of the performance. Strickland, 466 U.S. at 668. Several courts have found to object to prejudicial evidence as ineffective assistance. See e.g., Lombard v. Lynaugh, 868 F.2d 1475, 1479-80 (5th Cir. 1989); Bolander v. Iowa, 978 F.2d 1079, 1082-84 (8th Cir. 1992). In certain cases or circumstances, failure to object to prejudicial evidence or other matters may be within sound trial tactics. United States v. Necoechea, 986 F.2d 1273 (9th Cir. 1993). In this case, there can be no sound strategy that would lead to a failure to object to highly prejudicial evidence that undermined any opportunity to avoid a guilty verdict.

Here, there are numerous examples of not only deficient counsel but that these deficiencies most certainly prejudiced Petitioner's judicial proceedings.

Like the criminal statutes at issue in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1973, 128 L.Ed.2d 608 (1994); Liprota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 95 L.Ed.2d 434 (1985) and, Morrissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.2d 288 (1952). Section 2255 must require mens rea to avoid criminalizing innocent conduct. Criminal statutes must be construed "in light of the background rules of common law, in which the requirement of some mens rea for a crime is firmly embedded. The existence of mens rea is the rule, rather than the exception to, the principles of Anglo-American Jurisprudence." Staples, 511 U.S. at 605 (citations omitted). For the typical offense, "an injury can amount to a crime only when inflicted by intention." Morrissette, 342 U.S. at 250.

Failure to subject the Government's case to any meaningful adversarial testing is tantamount to a dereliction by Counsel of his duty of loyalty to Petitioner. Defense owes a client a duty of loyalty. Frazer v. United States, 18 F.3d 778 (9th Cir. 1994). This "duty of loyalty" has been described as "perhaps the most basic of counsel's duties." Strickland v. Washington, 466 U.S. at 692, 104 S.Ct. at 2067. The Ninth Circuit in Frazer cited with approval the Tenth Circuit holding that 'an attorney who adopts and acts upon belief that his client should be convicted 'fails to function in any meaningful sense as the government's adversary.'" Id. (quoting Osborn v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1998)).

The Frazer Court also held that an attorney who abandons his duty of loyalty to his client may by so doing create a conflict of interest. "A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest. Such an attorney like unwanted counsel, 'represents' the defendant only through a tenuous and unacceptable friction.'" Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). In fact, an attorney who is burdened by a conflict between his client's inetrests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition." Id. at 1075 (quoting Osborn, 861 F.2d at 629). See also, Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."); Holloway v. Arkansas, 435 U.S. 475, 490-96, 98 S.Ct. 1173, 1181-82, 55 L.Ed.2d 426 (1978).

**WHETHER THE DISTRICT COURT'S FAILURE TO CONSIDER NUMEROUS ERRORS**

**IN ENHANCING PETITIONER RENDERED HIS SENTENCE UNREASONABLE**

Standard of Review

The District Court's sentencing decisions, including the predicates it uses for enhancement for abuse of discretion. United States v. Carty, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (citing, Gall v. United States, 128 S.Ct. 586, 597 (2007). First, it must be determined whether the District Court properly calculated the applicable range under the advisory guidelines. United States v. Mouhamed, 459 F.3d 979, 985 (9th Cir. 2006). The appellate court reviews de novo for clear error the district court's determination of the facts. United States v. Barsumyan, 517 F.3d 1154, 1157 (9th Cir. 2008). Further, the sentence is also reviewed for substantive reasonableness. Carty, 520 F.2d at 993).

Discussion

There is no doubt that mere possession of the weapon is not sufficient to justify imposition of the enhancement. Note 3 to U.S.S.G. 2D1.1(b)(1), provides the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, according to the Note, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

While the weapon does not necessarily have to be in the same location as the drugs, mere presence of the weapon does not call for application of the enhancement. The possession of the weapon must be in connection with the offense. United States v. Willard, 919 F.2d 606, 609 (9th Cir. 1990).

Further, the Government must prove these facts by a preponderance of the evidence before the Court can apply the increase. United States v. Mergerson,

4 F.3d 337, 350 (5th Cir. 1993).

In deciding whether the Government satisfied its initial burden, the Court may look at relevant conduct which includes "acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §1B1.3(a)(2). Specifically, however, the Government must show that the firearm had "some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." United States v. Timmons, 283 F.3d 1246, 1251 (11th Cir. 2002) (citing, Smith v. United States, 508 223, 238 (1993)).

Here the Government did not meet its burden of proof to allow imposition of the enhancement. Without more, the enhancement should be stricken, since the requisite connection was not proven. With such paltry evidence, the Government has simply not met its burden to justify imposition of the enhancement.

For all these reasons, the two-point adjustment pursuant to 2D1.1(b)(1) should be stricken.

23

## THE PROBATION OFFICER'S REPORT WAS INADMISSIBLE HEARSAY

### UNDER THE FEDERAL RULES OF EVIDENCE

The Federal Rules of Evidence "govern proceedings in the courts of the United States ... to the extent and with the exceptions stated in Rule 1101." Fed. R. Evid. 101. While the Rules apply to criminal cases, Fed. R. Evid. 1102(b), an exception is carved out for sentencing proceedings. Fed. R. Evid. 1101(d)(3). After Apprendi and Blakely, however, this exception is no longer tenable. If the Sixth Amendment commands that facts relevant to certain enhancements be submitted to a jury and proven beyond a reasonable doubt, phase of a criminal case is no longer outside of the purview of the Rules. Because the Rules applied to Petitioner's case, and because the Probation Officer's report was prejudicially inadmissible hearsay, Petitioner's sentence must be reversed.

Heresay is an out-of-court statement offered in evidence to prove the matter asserted. Fed. R. Evid. 801(c). Statements for purposes of the hearsay exception applies, hearsay is inadmissible. Fed. R. Evid. 803.

The exception for public records and reports does not apply because, by its terms, it specifically excludes from "criminal cases matters observed by police officers and other law enforcement personnel." Fed. R. Evid. 803(8). The DEA report on the nature and quantity of the drugs clearly falls under this exclusion.

The exception for business records or regularly-conducted activity also does not apply. That exception provides for admissibility of:

> A memorandum, report, record, or data compilation, in any form, of facts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by a person with knowledge, if kept in the course of regularly conducted business activity to make the memorandum, report or data compilation, all as shown by the testimony of the custodian

> or other qualified witness, or by certification that
> complies with Rule 902(11), Rule 902(12), or a statute
> permitting certification, unless the source of information
> or the method or circumstances of preparation indicate
> lack of trustworthiness. Fed. R. Evid. 803(6).

Probation Officer's reports which affix or determine drug quantity have

been admitted pursuant to this heresay exception. However, this is only

appropriate when the rule's prerequisites to admissibility are complied with.

In <u>United States v. Garnett</u>, 122 F.3d 1016 (11th Cir. 1997), the Eleventh

Circuit upheld the admission of a lab report identifying the contents of

bottles as iodine and other substances because a proper foundation had been

laid.

> Fed. R. Evid. 803(6) requires the testimony of a custodian
> or other qualified witness who can explain the record-keeping
> procedure utilized. It is not necessary for the person who
> actually prepared the documents to testify so long as there
> is other circumstantial evidence and testimony to suggest the
> trustworthiness of the documents. <u>Itel Capital Corp. v. Cups
> Coal Co.</u>, 707 F.2d 1253, 1259 (11th Cir. 1983). Based on his
> personal knowledge of F.D.A. protocol and the procedures
> followed in this case, Dr. Satzger laid the foundation for
> admission of the lab report. He testified that reports like
> the one at issue are regularly prepared at the F.D.A. lab in
> the normal course of business and that he physically observed
> the drug samples and reporting in this case. <u>Id.</u> at 1018-19.

No such foundation was laid in the Probation Officer's findings of drug

quantity. This was error.

In the following section Petitioner argues the inadequacy of Counsel's

performance under the following captions: (1) The Probation Officer's report was

was inadmissible Hearsay under the Federal Rules of Evidence. (2) Type of

Methamphetamine defense which Counsel failed to argue. (3) The District Court's

failure to consider numerous errors in enhancing sentence.

## THE DISTRICT COURT VIOLATED PETITIONER'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT AND THEREBY IMPOSED AN UNREASONABLE SENTENCE BY FAILING TO REQUIRE ADVISORY GUIDELINE ADJUSTMENTS BE PROVEN BEYOND A REASONABLE DOUBT

### Standard of Review

Under Booker, the ultimate sentence imposed under the factors set forth in 18 U.S.C. §3553(a) is reviewed for "reasonableness." United States v. Staten, ___ F.3d ___, 2006 WL 1542835 (9th Cir. 2006), citing United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006). If, however, "there was material error in the Guidelines calculation that serves as the starting point for the district court's sentencing decision, we will remand for resentencing pursuant to 18 U.S.C. §3742(f), without reaching the question of whether the sentence as a whole is reasonable in light of §3553(a)." Id. at 1280. See also, United States v. Mix, 442 F.3d 1191, 1195 (9th Cir. 2006) ("If the district court incorrectly construed the Sentencing Guidelines, we must vacate the sentence and remand for resentencing"). However, the Court reviews the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error. Cantrell, 433 F.3d at 1279 quoting, United States v. Kimbrew, 406 F.3d 1149, 1151 (9th Cir. 2005).

The District Court imposed two sentencing enhancements in sentencing Petitioner. The first was a three-level increase for an aggravated role and the second was for possession of a firearm which the judge believed was related to the underlying drug offense to which he pled guilty. Petitioner objected to these enhancements recommended by the Government and Probation Officer.

After Booker, sentencing courts must apply a standard of proof beyond a reasonable doubt to sentencing findings that affect the advisory guideline

range. See, United States v. Malouf, 377 F.Supp.2d 315, 2005 WL 1398624
(D. Mass. 2005). The District Court's factual findings on the question of
role in the offense and enhancement for possession of a firearm are such
factual findings.

In Booker, the Supreme Court ruled that a criminal defendant cannot be
subjected to a mandatory Guideline sentence when the sentence is increased
based on judicially found facts. United States v. Booker, 543 U.S. 220, 125
S.Ct. 738, 749-55 (2005). The Supreme Court had previously held that factual
findings which affect the sentence must be found beyond a reasonable doubt
by a jury. Ring v. Arizona, 536 U.S. 584, 609 (2002). See also, Id. at 610-11
(Scalia, J. concurring).

The Booker remedial majority declined to engraft the Sixth Amendment's
jury trial requirement onto the existing system. Instead, the Court resolved
the constitutional problem by concluding that the sentencing guidelines were
advisory, rather than binding on the district court. However, nothing in the
remedial majority's opinion prohibits use of the beyond a reasonable doubt
standard, based on the Fifth Amendment's Due Process clause. In re Winship,
397 U.S. 358, 359 (1970). Nor does the Booker decision suggest that a lower
standard of proof is appropriate. As Justice Thomas observed, Booker's holding
"corrects [the] mistaken belief" of the Sentencing Commission that "use of
a preponderance of the evidence standard is appropriate to meet due process
requirements and policy concerns in resolving disputes regarding application
of the guidelines to the facts of a case." Booker, 125 S.Ct. at 186 n.6
(Thomas, J., dissenting) (quoting U.S.S.G. §6A1.3, comment). While the Court
did not address the standard of proof applicable to "advisory" guidelines
findings, the due process clause of the Fifth Amendment requires use of the
highest standard beyond a reasonable doubt.

A cardinal principle of statutory interpretation dictates that when

27

there is a "serious doubt" regarding the constitutionality of a statute, the court must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (quoting Crowell v. Benson, 285 U.S. 22, 62 (1932)). "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." United States v. Buckland, 289 F.3d 558, 564 (9th Cir. 2002) (en banc) (quoting Hooper v. California, 155 U.S. 648, 657 (1895)). Because the sentencing statutes and rules do not set out a standard of proof for Guidelines enhancements, this Court need only assess whether the reasonable doubt question is a serious one. If so, the Court is required to apply the doctrine of constitutional avoidance and construe the sentencing statutes to require proof beyond a reasonable doubt as to contested facts. Clark v. Martinez, 125 S.Ct. 716, 723-24 (2005).

In Buckland, the Court addressed the effect of Apprendi on 21 U.S.C. §841. Previously, courts uniformly interpreted this statute to treat drug quantity as a sentencing factor, to be determined by a judge using a preponderance of the evidence standard. After Apprendi, the Court reexamined the statute. To avoid a finding that the statute was unconstitutional, the Court concluded that §841 required the jury to find or the defendant to admit proof of the drug quantities necessary to increase defendant's maximum sentence. Buckland, 289 F.3d at 564; See, United States v. Thomas, 355 F.3d 1191 (9th Cir. 2004).

Given the Booker holding that the Sixth Amendment applies to the Sentencing Guidelines, the sentencing guidelines can be constitutionally valid only if sentence enhancing facts are found using the reasonable doubt standard. While the guidelines have been rendered advisory, and therefore do not bind district courts as previously, the guidelines still have a significant impact on sentencing. Under 18 U.S.C. §3553(a), district courts must consider sentencing guidelines. For many judges, the "advisory" nature of the guidelines is all

but absolute. Most district judges sitting today have never imposed sentence
under the complete discretion accorded to judges prior to the enactment of
the sentencing guidelines. Some judges have even stated that, notwithstanding
Booker amd Section 3553, the guidelines are the only relevant consideration.
See, United States v. Wilson, F.Supp.2d 910 (D. Utah 2005). the powerful
impact of the guidelines requires use of the heightened standard of proof
to comport with the Fifth Amendment.

Judge Bataillon, of the United States District Court for the District of
Nebraska, recently issued a memorandum opinion analyzing the impact of the
Apprendi / Booker line of cases on the question of the applicable burden of
proof for findings that increase the defendant's sentence under the advisory
guidelines. United States v. Huerta-Rodriguez, 355 F.Supp.2d 1019 (D. Neb
2005); accord, United States v. Okai, 2005 WL 2042301 (D. Neb. 2005). The
Court held that to comply with due process, it would "require that a defendant
is afforded procedural protections under the Fifth and Sixth Amendments in
connection with any facts on which the government seeks to rely to increase
a defendant's sentence." Because the line separating a sentencing enhancement
fact from an element of the offense "remains blurred after Booker," the Court
determined to "err on the side of caution in protecting a criminal defendant's
constitutional rights." The Court wrote:

> [T]he court will apply the same standard of proof to the
> factual showing that would be applied in reviewing the
> sufficiency of the evidence to support the finding, or
> in conducting harmless error review on appeal, e.g.,
> whether a reasonable juror could have found the fact
> beyond a reasonable doubt. (citations & footnote omitted).

Whatever the constitutional limitations on the advisory sentencing scheme,
the court finds that it can never be "reasonable" to base any significant
increase in a defendant's sentence on facts that have not been proven beyond
a reasonable doubt. Huerta-Rodriguez, 355 F.Supp.2d at 20, citing, Ring v.-

Arizona. 536 U.S. 584, 592–93 and n.1 (2002); Apprendi, 530 U.S. at 477 and

Jones v. United States, 526 U.S. 277, 243 n.6 (1999). In a more recent decision,

Judge Bataillon reiterated that the Fifth Amendment required the court to use

a standard of proof beyond a reasonable doubt. Okai, 2005 WL 5042301. The

Court noted that while the remedial section of the Booker decision concluded

that there was no Sixth Amendment violation if the Guidelines were advisory,

that decision did not resolve the question whether an increased sentence

nonetheless violated the Fifth Amendment. 2005 WL 2042301, 6–7. The Court

reasoned that because a sentencing court's discretion remained limited after

Booker, constitutional safeguards attach to a sentence at "the point at which

the sentence exceeds 'the limits fixed by law.'" Id. at 7 (quoting Apprendi

v. New Jersey, 530 U.S. 466, 566 n.9 (2000)). Those limits are established

by the defendant's plea or the jury verdict. Id at 8–9. The District Courts

for the District of Massachusetts and the Northern District of Ohio have

reached similar conclusions. United States v. Pimental, 367 F.Supp.2d 143

(D. Mass. 2005) (holding that Fifth Amendment requires application of the

beyond a reasonable doubt standard to enhancements because each judicial

finding of fact has "quantifiable consequences" on defendant's sentence),

accord, United States v. Coleman, 370 F.Supp.2d 661, 668 (S.D. Ohio 2005);

United States v. Kelly, 355 F.Supp.2d 1031 (D. Neb. 2005). The Tenth Circuit

has suggested that a district court may apply a burden of proof of beyond a

reasonable doubt, or at least a level of fact–skeptisism beyond a mere

preponderance. United States v. Dazey, 403 F.3d 1147, 1178 (10th Cir. 2005).

The Supreme Court's decision in Ring v. Arizona, and Schriro v. Summerlin

further support a conclusion that the heightened burden of proof should apply

to federal sentencings. While the question of who makes a decision is

fundamentally procedural, Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519,

2523-24 (2004), the applicable burden of proof is a substantive question. Constitutional rulings regarding the applicable burden of proof have been applied retroactively to cases on collateral attack. Ivan v. City of New York, 407 U.S. 203, 205 (1972). The Schriro decision concerned whether the rule established in Ring, requiring that findings which increased the penalty from life imprisonment to death be made by a jury, rather than a judge, was retroactive to cases on collateral attack. The discussion in Schriro is relevant to the question of what standard of proof must be applied in federal sentencing proceedings in the first instance. The Schriro majority began its analysis by reiterating Teague's exception for rules "implicating the fundamental fairness and accuracy of the criminal proceeding." Id at 2323. The Court implied that the standard of proof, as opposed to the identity of the fact-finder, would be retroactive to cases on collateral attack because it seriously enhanced accuracy. Id. The requirement that any finding affecting sentencing be supported by proof beyond a reasonable doubt is central to protecting the rights of the accused and the accuracy of criminal convictions and sentences.

The Supreme Court has articulated the importance of the heightened burden of proof in several analogous contexts. In Cage v. Louisiana, 498 U.S. 39 (1990), the Court emphasized the vital role of the reasonable doubt standard:

> [T]he Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 ... (1970) ... This reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." Winship, 397 U.S. at 363. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error." 498 U.S. 39, 39-40 (1990) (some internal citations omitted). The Winship decision makes clear that the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns, the same concerns expressed in Apprendi and Booker.

31

## WHETHER THE DISTRICT COURT'S JURISDICTION LOST THE POWER TO SUSTAIN THE SUBJECT MATTER JURISDICTION OF THE PRESENTENCING INVESTIGATION REPORT (PSIR) WHICH CONTAINS CONSTITUTIONAL ERRORS BASED ON RECENT SUPREME COURT LINE OF RULINGS REQUIRING RESENTENCING

The Supreme Court's line of rulings found in <u>Jones v. United States</u>, 526 U.S. 277, 230 (1999); <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000); <u>Blakely v. Washington</u>, 542 U.S. ___ (2004) No. 04-105 (2005) have placed the Presentencing Investigation Report (PSIR) with constitutional errors that cannot create subject matter jurisdiction in order for this Court to consider for sentencing purposes under Rule 32, Subsections (c)(1)(A)(11) and (d)(1) et. seq. of the Federal Rules of Criminal Procedure (F.R.C.P.).

First, the PSIR has been memorialized with inaccurate facts as established by the Supreme Court's line of rulings. <u>See</u> e.g., <u>United States v. Jones</u>, 256 F.3d 922 (9th Cir. 2001) (quoting <u>United States v. Petty</u>, 982 F.2d 1365, 1368 (9th Cir. 1993)).

> A defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information.

Second, the PSIR contains the substance of Title 18 U.S.C. §3553(b) as the mandatory application which was declared unconstitutional by <u>Fanfan</u>. The severance of the remainder of the Guidelines now satisfies the Court's constitutional requirements. <u>See</u>, the FRCP 32(c) "Presentence Investigation:"

> (1)(A) In General. The probation officer must conduct a presentence investigation and submit a report to the Court before it imposes sentence unless:
>
> ...(11) the Court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. §3553, and the Court explains its findings on the record.

<u>See</u> also, the FRCP 32(d) "Presentence Report:"

> (1) Applying the Sentencing Guidelines. The Presentence Report must:

(A) Identify all applicable guidelines (<u>including the severed §3553(b) and policy statements of the Sentencing Commission</u>).

(B) Calculate the defendant's offense level (<u>not based on jury's verdict, nor on defendant's admission</u>), <u>Booker</u> and criminal history category.

(C) State the resulting sentencing range and kinds of sentencing available.

(D) Identify any factor (<u>in vioaltion of Booker</u>) for departing from the applicable sentencing range. (commentaries in brackets added).

The PSIR's identification over enhancements and the quantity in drug cases were unconstitutionally used at sentencing without having been admitted by Petitioner or proved by a jury beyond a reasonable doubt. As to this matter, the Court shall make a finding as to Petitioner's allegations, or shall make determination that the PSIR contains unproven enhancements and quantity in drug cases that were facts necessary to support the sentence. See e.g., <u>United States v. Gutierrez-Hernandez</u>, 94 F.3d 582 (9th Cir., cert. denied, 117 S.Ct. 752 (1997).

When defendant challenges information contained in Presentence Investigation Report, District Court must make written findings of fact concerning any disputed matter which it relies upon in sentencing. Fed. Rules. Crim. P. Rule 32(c)(1) 18 USCA.

Thus, the need to prepare a PSIR is before a criminal defendant pleads guilty or is convicted. FRAP 32(e)(1). The prosecutor may object that the preparation will unnecessarily delay the prosecution; but, the likelihood of significant delay is overstated because it is presumed that reports prepared by professional probation officers are generally reliable. Fanfan, 20p pg. 14:

A system that would require that the jury, not the judge, to make the additional '566 grams' finding is a system in which the prosecutor, not the judge, would control the sentence. That is because it is the prosecutor (<u>not the probation officer</u>) who would have to decide what drug amount to charge. He could choose to charge 658.5 grams or 92.5 or less. It is the prosecutor (<u>not the probation</u>

> officer) who through such a charging decision would control
> the sentencing range. And it is different prosecutors (not
> different probation officers) who, in different cases – say,
> in two cases involving 566 grams – would potentially insist
> upon different punishments for similar defendants who engage
> in similar criminal conduct involving similar amounts of
> unlawful drugs – say, by charging one of them with the full
> 566 grams and the other with 10. As long as different
> prosecutors react differently, a system with a patched-on-
> jury fact-finding requirement would mean different sentences
> for otherwise similar conduct, whether in the context of
> trials or that of plea bargaining.
> (commentaries in brackets added).

The PSIR contains erroneous District Court's interpretation over sentencing

factors which Petitioner had no opportunity to deny or explain. See e.g.,

Gardner v. Florida, 430 U.S. 349, 51 L.Ed.2d 393, 97 S.Ct. (1977) (vacated

and remanded because of confidential information in the Presentence Investigation

Report which defendant had no opportunity to deny and explain). Any factual

inaccuracy in PSIR may be raised for the first time on appeal and requires

resentencing. United States v. Manotas-Mejia, 824 F.2d 360 (5th Cir. 1987).

> Rule 32(c)(3)(D) serves two functions. First, it protects
> the defendant from being sentenced on inaccurate information.
> Second, it creates an accurate record of the factors on
> which the District Court relied at sentencing. Such a record
> is important, because prison or parole officers may consider
> information in PSIR when making correctional or parole decisions.

See, United States v. Velasquez, 748 F.2d 972, 974 (5th Cir. 1984); United

States v. Lawal, 810 F.2d 491, 494 (5th Cir. 1987) (PSIR states that defendant

obtained $100,000.00 in mail fraud scheme while defendant claimed he obtained

only $6,200.00; United States v. Petito, 767 F.2d 607, 611 (9th Cir. 1985).

A failure of the District Court to comply with Rule 32(c)(3)(D) may be raised

for the first time on appeal and requires resentencing. Velasquez, 948 F.2d

at 973; Petito, 767 F.2d at 611; United States v. O'Neill, 767 F.2d 780, 787

(11th Cir. 1985).

The PSIR fails to recognize that the subject matter of Title 21 U.S.C.

§841(b) is an element of the offense as defined in United States v. Moore,

423 U.S. 122, 96 S.Ct. 355, 46 L.Ed.2d 333 at 342 (1975), which is supported today by Jones, Apprendi, Blakely and Fanfan, as well as any other enhancements under the sentencing guidelines that were not admitted by Petitioner, nor proven to a jury beyond a reasonable doubt. The instant plea places both the guidelines and §841(b)'s subject matters altered for sentencing purposes. This is a plain error that would require correction.

The PSIR's sentence recommendation exceeds the guidelines penalties range to which Petitioner was exposed and places the guidelines as a mandatory application. FRAP 3(b), Title 18 U.S.C. §3553(b). Although a sentencing judge is not bound by a presentence recommendation concerning a sentence, United States v. Blythe, 944 F.2d 356 (7th Cir. 1991), the erroneous information contained in the PSIR could have been intruded and perplexed in the sentencing judge's mind because the PSIR strictly relied on the guideline's mandatory enforcement. FRAP 32(d)(1)(A), Title 18 U.S.C. §3553(b):

> ... the court's determination whether a circumstance was adequately taken into consideration the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

Accordingly, the PSIR must contain the classification of the offense and of the defendant under the categories established by the Sentencing Commission pursuant to Title 28 U.S.C. §944(a), that the probation officer believes to be applicable to Petitioner's case, the applicable findings for sentencing and the sentencing range suggested for such a category of offense committed by such a category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to §954(a)(1) and an explanation by the probation officer of any factors that may indicate that a sentence of a different kind or a different length be imposed.

This is not to say, of course, that a substantive factor may never be determined at sentencing, provided that such a factor is not an element of

the offense. See e.g., Fanfan, 20p pg. 8:

> This court's earlier opinions assumed that this system
> will continue. That is why the court, for example, held
> in United States v. Watts, 519 U.S. 148 (1997) (per curiam)
> that a sentencing judge could rely for sentencing purposes
> upon fact that a jury had found unproved (beyond a reasonable
> doubt). See, Id. at 157. See also, Id. at 152-153 (quoting
> United States Sentencing Commission, Guideline Manual
> §1B1.3 comment, backg'd. (Nov. 1995) (USSG)), which describes
> in sweeping language the conduct that a sentencing court
> may consider in determining the applicable guideline range,
> "and which provides that conduct that is not formally charged
> or is not an element of the offense of the conviction may
> enter into the determination of the applicable guidelines
> sentencing range."

Therefore, the PSIR has been memorialized with inaccurate facts based on previous District Court "good-faith" interpretations over the subject matters of sentencing enhancements and quantity in drug cases. Such good-faith interpretations, without necessity, have been unconstitutionally allowed for decades regardless of earlier definitions held by the Supreme Court in United States v. Moore, supra, (21 U.S.C. §841(b)), and by the Supreme Court's recent line of rulings.

The PSIR plays a critical role in the judge's determination within the applicable guidelines range for the imposition of an appropriate sentence. Any enhancement and the controlled substance found in the mixture - used in a drug case, are main components in a PSIR. Such components are actually tainted by plain error exposed by the Supreme Court's line of rulings. Petitioner's PSIR shall be corrected and Petitioner resentenced.

## CONCLUSION

Some constitutional errors or violations, such as Petitioner alleges, by their very nature can never be considered harmless. See, Safferwhite v. Texas, 486 U.S. 249, 256 (1988). Accord, Neder v. United States, 527 U.S. 1, 7 (1999). ("[W]e have recognized a limited class of fundamental constitutional errors that defy analysis by 'harmless error' standard ... errors of this type are so intrinsically harmful as to require reversal (i.e. 'affect substantial rights') without regard to their effect on the outcome"); Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) ("Although most constitutional errors have been held amenable to harmless-error analysis, some will always invalidate the conviction") (citations omitted). Id. at 283 (Rehnquist, C.J. concurring); United States v. Olano, 507 U.S. 725, 735 (1993); Rose v. Clark, 478 U.S. 570, 577-78 (1986) ("Some constitutional errors require reversal without regard to the evidence in the particular case ... [because they] render a trial fundamentally unfair"); Vasquez v. Hillary, 474 U.S. 254, 263-64 (1986); Chapman v. California, 386 U.S. 18, 23 (1967) ("There are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error").

In Arizona v. Fulminante, 499 U.S. 279 (1991) a five-justice majority of the Court elucidated this rule of per se prejudice (something called the "rule of automatic reversal") by distinguishing between the concepts of "structural" and "trial error." Structural defects in the constitution of the trial mechanism are per se prejudicial; trial errors occurring "during the presentation of the case to the jury" are subject to harmless error analysis.

Petitioner's allegations implicate Fulminante, supra, 499 U.S. at 309. See also, Neder v. United States, 527 U.S. 1, 7 (1999); Johnson v. United States, (citations omitted).

**RELIEF SOUGHT**

WHEREFORE, Petitioner, Linhbergh Carlos Arceo moves this Honorable Court to review his Petition For Habeas Relief Under 28 U.S.C. §2255 On Motion To Set Aside, Vacate Or Correct Sentence on its merits and grant the requested relief.

Respectfully Submitted,

February 13, 2012

Linhbergh Carlos Arceo
Pro Se Petitioner

1      CERTIFICATE OF SERVICE

2      I, ___Linhbergh Carlos Arceo___, hereby certify that I have

3   served a true and correct copy of;

4

                    PETITION FOR HABEAS RELIEF UNDER
5                   28 U.S.C. §2255 ON MOTION TO SET
                    ASIDE, VACATE OR CORRECT SENTENCE
6

7

8   [which is considered filed/served at the moment it was delivered

9   to prison authorities for mailing as provided for in Houston v.

10  Lack, 487 U.S. 266, 101 L.Ed.2d 245 (1988)] to the following

11  listed parties/persons by placing a complete copy of the above

12  described materials in a sealed envelope affixed with the

13  appropriate pre-paid first-class United States postage:

14                                        )
            Clerk of the Court            )      U.S. Attorney
15          U.S. Courthouse               )      U.S. Courthouse
            280 South First St., Rm 2112  )      280 South First St., Rm. 371
16          San Jose, CA 95113-3002       )      San Jose, CA 95113-3002
                                          )
17

18

19  and deposited same with prison officials here at the Federal

20  Correctional Institution in Lompoc, California, on this the

21  _13th_ day of ____February____, 20_12_.

22      Pursuant to Title 28, United States Code section 1746, I

23  declare under penalty of perjury that the foregoing is true and

24  correct.  Executed this the __13th__ day of __February__, 20_12_.

25

26                        (Signature) _L. Carlos Arceo_

27                        Printed Name: Linhbergh Carlos Arceo
                          Federal Register # 13136-111
28                        Federal Correctional Institution (Low)
                          3600 Guard Road, Lompoc, CA 93436-2705
                          No Telephone/Fax/E-Mail Available

$7.6



⇔13136-111⇔
Clerk Of The Court
U.S. Courthouse
280 South First St., Rm. 2112
SAN JOSE, CA 95113-3002
United States

LEGAL MAIL

nhbergn Carlos Arceo
ed. Reg. No.
Federal Correc
600 Guard Roa
ompoc, CA 93436-2700

9696 0262 2000 0002 7011



LEGAL MAIL

FCI LOMPOC
3600 GUARD ROAD
LOMPOC, CA 93436

DATE _____

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another address, please return the enclosed to the above address.

02-14-12   08:10   RCVD



ENVELOPE 9X12 GRIP SEAL W
WITHOUT MOISTENING

0  26900 90740  9

6503011